[No. B084790. Second Dist., Div. Five. Oct. 19, 1995.]

STEVEN L. RE, Plaintiff and Appellant, v.
PAMELA ANN RE, Defendant and Respondent.

92

**COUNSEL**

Barton, Klugman & Oetting and Ronald R. St. John for Plaintiff and Appellant.

Robert F. Rubin for Defendant and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Plaintiff, Steven L. Re, appeals from a judgment on his complaint against his sister, defendant, Pamela Ann Re,[1] for partition of two parcels of real property which they had received by grant deed as joint tenants with their

---

[1] In the balance of the opinion, we refer to Steven and Pamela by their first names for clarity and not out of disrespect.

mother, Jane Re Norman.[2] The sole contention on appeal is the trial court erred in determining the effect of a grant deed to Pamela which was executed by Mrs. Norman. The deed was not recorded until after the death of Mrs. Norman. For the reasons stated below, we affirm.

## II. Background

The complaint,[3] which was filed on January 10, 1990, alleged that on March 7, 1975, Steven, Pamela, and Mrs. Norman acquired the subject parcels as joint tenants. Between 1975 and the time the action was filed, Mrs. Norman collected and received the rents and profits from the property and, despite Steven's demand, refused to give an accounting or pay him any of the sums. He sought partition of the properties, an accounting, and the appointment of a receiver.

Pamela and Mrs. Norman answered the complaint. The answer denied the properties were held in joint tenancy or that an accounting was due to Steven. The answer also contained several affirmative defenses including: Mrs. Norman had a life estate in the properties; Steven's property rights vested only upon Mrs. Norman's death; the action was barred by the doctrines of laches, waiver, estoppel, and unclean hands; Steven lacked sufficient interest in the properties to bring a partition action; and any judgment in plaintiff's favor should be reduced by an offset for the maintenance of the properties. As indicated above, while the action was pending, Mrs. Norman died.

The matter proceeded to trial at which the following evidence was introduced. On September 10, 1974, Mrs. Norman's mother, Letizia E. Partiilo, executed two joint tenancy grant deeds for two parcels of real property commonly known as 124 North Maple Street in Burbank and 10302 Fairgrove Avenue in Tujunga. The deeds transferred title to "JANE RE NORMAN, a married woman as her separate property, PAMELA ANN RE, a single woman and STEVEN LEE RE, a single man AS JOINT TENANTS." Mrs. Norman managed the properties until her death in July 1992, at which time Pamela began managing the properties. The parties vigorously disputed whether Pamela and Steven orally agreed with the mother that the two properties really belonged to Mrs. Norman. Pamela testified their grandmother granted the properties to them in joint tenancy in order to defeat any

[2]Mrs. Norman died before the action proceeded to trial.

[3]Defendant has asked the court to augment the record on appeal with several documents including the complaint, the answer, and a number of exhibits which were introduced at trial. Because the documents are necessary for the disposition of the appeal, the request is granted. (Cal. Rules of Court, rule 12(a); *People* v. *Brooks* (1980) 26 Cal.3d 471, 483-484 [162 Cal.Rptr. 177, 605 P.2d 1306]; *People* v. *Gaston* (1978) 20 Cal.3d 476, 482 [143 Cal.Rptr. 205, 573 P.2d 423].)

claims by their stepfather, Mrs. Norman's husband, who ultimately predeceased her. In 1989, Mrs. Norman and Steven had a dispute about a loan she had made to Steven for an investment, which he had not repaid. The dispute led to a threat by Steven to file an action to partition the properties. In response to the threat, on October 6, 1989, Pamela and Mrs. Norman retained counsel and executed two deeds regarding the two properties. The deeds provided: "JANE RE NORMAN . . . and PAMELA ANN RE . . . as to an undivided two-thirds interest hereby [grants] to JANE RE NORMAN, a widow as her separate property and PAMELA ANN RE, a single woman as Joint Tenants as to an undivided two-thirds interest." Pamela recorded the deeds on July 24, 1992, the day after her mother's death.

During argument to the trial court, Steven contended he was entitled to a one-half interest in the properties because the posthumously recorded deed was insufficient to defeat his right of survivorship based on Civil Code section 683.2, subdivision (c).[4] Although the trial court granted the request for partition and ordered the properties sold, the trial court rejected Steven's claim that his rights were not defeated pursuant to section 683.2, subdivision (c). Instead, the trial court concluded subdivision (d) of section 683.2 provided an exception to subdivision (c) and controlled the disposition of the case. In accordance with its conclusion, in addition to other relief, the trial court ordered the proceeds from the sale of properties to be distributed one-third to Steven and two-thirds to Pamela. Steven filed a timely notice of appeal from the judgment.

## III.  DISCUSSION

■   A joint tenancy is a unique combination of rights which can only be created by written instrument. (§ 683;[5] *Estate of MacDonald* (1990) 51 Cal.3d 262, 271 [272 Cal.Rptr. 153, 794 P.2d 911]; *California Trust Co.* v. *Bennett* (1949) 33 Cal.2d 694, 697 [204 P.2d 324]; *Estate of Seibert* (1990) 226 Cal.App.3d 338, 341 [276 Cal.Rptr. 508].) The California Supreme Court has held: "[F]our unities are essential to an estate in joint tenancy: unity of interest, unity of time, unity of title, and unity of possession.

---

[4]All further statutory references are to the Civil Code.

[5]Section 683 provides in part: "(a) A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself or herself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from a husband and wife, when holding title as community property or otherwise to themselves or to themselves and others or to one of them and to another or others, when expressly declared in the transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants. A joint tenancy in personal property may be created by a written transfer, instrument, or agreement."

[Citations.] [¶] The requirement of four unities reflects the basic concept that there is but one estate which is taken jointly; if an essential unity is destroyed the joint tenancy is severed and a tenancy in common results. [Citations.]" (*Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 155 [133 Cal.Rptr. 10, 554 P.2d 330]; *Hammond* v. *McArthur* (1947) 30 Cal.2d 512, 514 [183 P.2d 1].) Severance of the joint tenancy extinguishes the right of survivorship which is the principal feature of the estate. (*Estate of Propst* (1990) 50 Cal.3d 448, 455 [268 Cal.Rptr. 114, 788 P.2d 628]; *Tenhet* v. *Boswell*, *supra*, 18 Cal.3d at p. 155.) As our Supreme observed in *Estate of Propst*, *supra*, 50 Cal.3d at page 455, " '[A] joint tenant's right of survivorship is an expectancy that is not irrevocably fixed upon the creation of the estate [citation]; it arises only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed by voluntary conveyance [citation], by partition proceedings [citations], by involuntary alienation under an execution [citations], or by any other action which operates to sever the joint tenancy.' " Section 683.2,[6] subdivision (a)(1) and (2) provides that, in addition to any other means, a joint tenancy may be severed by a conveyance of title by a deed to third party. Also, it may be

---

[6]Section 683.2 provides: "(a) Subject to the limitations and requirements of this section, in addition to any other means by which a joint tenancy may be severed, a joint tenant may sever a joint tenancy in real property as to the joint tenant's interest without the joinder or consent of the other joint tenants by any of the following means: [¶] (1) Execution and delivery of a deed that conveys legal title to the joint tenant's interest to a third person, whether or not pursuant to an agreement that requires the third person to reconvey legal title to the joint tenant. [¶] (2) Execution of a written instrument that evidences the intent to sever the joint tenancy, including a deed that names the joint tenant as transferee, or of a written declaration that, as to the interest of the joint tenant, the joint tenancy is severed. [¶] (b) Nothing in this section authorizes severance of a joint tenancy contrary to a written agreement of the joint tenants, but a severance contrary to a written agreement does not defeat the rights of a purchaser or encumbrancer for value in good faith and without knowledge of the written agreement. [¶] (c) Severance of a joint tenancy of record by deed, written declaration, or other written instrument pursuant to subdivision (a) is not effective to terminate the right of survivorship of the other joint tenants as to the severing joint tenant's interest unless one of the following requirements is satisfied: [¶] (1) Before the death of the severing joint tenant, the deed, written declaration, or other written instrument effecting the severance is recorded in the county where the real property is located. [¶] (2) The deed, written declaration, or other written instrument effecting the severance is executed and acknowledged before a notary public by the severing joint tenant not earlier than three days before the death of that joint tenant and is recorded in the county where the real property is located not later than seven days after the death of the severing joint tenant. [¶] (d) Nothing in subdivision (c) limits the manner or effect of: [¶] (1) A written instrument executed by all the joint tenants that severs the joint tenancy. [¶] (2) A severance made by or pursuant to a written agreement of all the joint tenants. [¶] (3) A deed from a joint tenant to another joint tenant. [¶] (e) Subdivisions (a) and (b) apply to all joint tenancies in real property, whether the joint tenancy was created before, on, or after January 1, 1985, except that in the case of the death of a joint tenant before January 1, 1985, the validity of a severance under subdivisions (a) and (b) is determined by the law in effect at the time of death. Subdivisions (c) and (d) do not apply to or affect a severance made before January 1, 1986, of a joint tenancy."

severed by execution of a written instrument that establishes intent to sever the joint tenancy. Here, on October 6, 1989, Pamela and her mother executed grant deeds to one another which stated that they were granting to each other a joint tenancy as to their undivided two-thirds interest in the subject properties. Those deeds showed an intent: to sever the joint tenancy with respect to Steven; to establish a joint tenancy between the mother and daughter to their interests in the property; and to establish a tenancy in common with Steven. (§ 683.2, subd. (a)(1) and (2); *Estate of Propst, supra,* 50 Cal.3d at p. 455; *Delanoy* v. *Delanoy* (1932) 216 Cal. 23, 26 [13 P.2d 513].)

At issue in this appeal is whether Steven is correct in claiming that the trial court erroneously determined he was only entitled to one-third of an interest in the properties based upon an incorrect interpretation of section 683.2, subdivisions (c) and (d). Citing section 683.2, subdivision (c), Steven contends his right of survivorship was not defeated because the grant deeds were not recorded prior to his mother's death. Section 683.2, subdivision (c) provides: "Severance of a joint tenancy of record by deed, written declaration, or other written instrument pursuant to subdivision (a) is not effective to terminate the right of survivorship of the other joint tenants as to the severing joint tenant's interest unless one of the following requirements is satisfied: [¶] (1) Before the death of the severing joint tenant, the deed, written declaration, or other written instrument effecting the severance is recorded in the county where the real property is located. [¶] (2) The deed, written declaration, or other written instrument effecting the severance is executed and acknowledged before a notary public by the severing joint tenant not earlier than three days before the death of that joint tenant and is recorded in the county where the real property is located not later than seven days after the death of the severing joint tenant." Pamela counters the trial court properly determined that section 683.2, subdivision (d)(3) provides an exception to the recording requirement contained in subdivision (c) for conveyances among joint tenants. Section 683.2, subdivision (d)(3) provides: "Nothing in subdivision (c) limits the manner or effect of: [¶] . . . [¶] (3) A deed from a joint tenant to another joint tenant."

Resolution of this dispute requires a determination of the meaning of these two subdivisions of section 683.2, which presents a question of law. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) An appellate court independently determines the proper interpretation of a statute and is not bound by the trial judge's interpretation. (*Burden* v. *Snowden, supra,* 2 Cal.4th at p. 562; *California Teachers Assn.* v. *San Diego Community College*

*Dist., supra,* 28 Cal.3d at p. 699.) The reviewing court begins its analysis with the fundamental rule which requires an ascertainment of the intent of the Legislature so as to effectuate the purpose of the statute. *(In re Christopher R.* (1993) 6 Cal.4th 86, 91 [23 Cal.Rptr.2d 786, 859 P.2d 1301]; *Woosley* v. *State of California* (1992) 3 Cal.4th 758, 775 [13 Cal.Rptr.2d 30, 838 P.2d 758].) Our Supreme Court has held: " 'In determining intent, [courts] look first to the language of the statute, giving effect to its "plain meaning." [Citations.] Although [the court] may properly rely on extrinsic aids, [it] should first turn to the words of the statute to determine the intent of the Legislature. [Citation.] Where the words of the statute are clear, [the court] may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.]" *(Burden* v. *Snowden, supra,* 2 Cal.4th at p. 562.)

▉ Steven argues that section 683.2, subdivision (c) clearly provides that his right of survivorship could not be defeated by the unrecorded deed. On one hand, Steven correctly asserts that the purpose of section 683.2, subdivision (c) is to prevent fraud from a secret severance. *(Estate of England* (1991) 233 Cal.App.3d 1, 6 [284 Cal.Rptr. 361]; see also Assem. Com. on Judiciary, Analysis of Assem. Bill No. 96 (1985-1986 Reg. Sess.) as amended Mar. 13, 1985; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 96 (1985-1986 Reg. Sess.) as amended Apr. 16, 1985.) However, on the other hand, in order to adopt Steven's interpretation, we would have to ignore section 683.2, subdivision (d)(3) which unequivocally states that "Nothing in subdivision (c) limits the manner or effect of: [¶] . . . [¶] A deed from a joint tenant to another joint tenant." Section 683.2, subdivision (d) clearly permits a joint tenant "to make a deed from one to another, without being subject to the requirements of subdivision (c)." (Legis. committee com.-Sen., 2 Sen. J. (1985-1986 Reg. Sess.) p. 1871; 18 Cal. Law Revision Com. Rep. (1985) p. 359.) Thus, section 683.2, subdivision (c) has no application to this case pursuant to the express language of subdivision (d). ▉ Our Supreme Court has noted: " '[A court is] required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.] "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.]' " *(Woosley* v. *State of California, supra,* 3 Cal.4th at pp. 775-776; accord, *Martinez* v. *Traubner* (1982) 32 Cal.3d 755, 758 [187 Cal.Rptr. 251, 653 P.2d 1046].) This court must avoid a construction which would make some words surplusage. *(Woosley* v. *State of California, supra,* 3 Cal.4th at p. 776; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) ▉ Here, two joint tenants, Mrs. Norman and Pamela, executed deeds to one another. This resulted in a severance of the joint tenancy between the

mother, daughter, and son. (§ 683.2, subd. (a)(2).) The severance under these circumstances is by the plain language of section 683.2, subdivision (d)(3) an exception to the requirement in subdivision (c) that the deed be recorded prior to the severing joint tenant's death.

Moreover, Steven's contention that section 683.2, subdivision (d)(3) only applied to the rights of the mother and daughter's transfer between themselves is not convincing. Nothing in the language of section 683.2, subdivision (d)(3) or its legislative history suggests the subdivision was meant to apply only to two severing joint tenants. The practical effect of such an interpretation would be to improperly read extra words into the statute because section 683.2, subdivision (d)(3) is not limited to "severing" joint tenants. Because section 683.2, subdivision (d)(3) clearly states subdivision (c) does not limit the manner or effect of "[a] deed from a joint tenant to another joint tenant," we, in the words of our Supreme Court, will "not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from is legislative history." (*Burden* v. *Snowden, supra*, 2 Cal.4th at p. 562.) Accordingly, the trial court properly concluded Steven was only entitled to a one-third interest in the properties; while Pamela was entitled to two-thirds interest pursuant to the joint tenancy with her late mother. (*Hammond* v. *McArthur, supra*, 30 Cal.2d at p. 516; *Gonzales* v. *Gonzales* (1968) 267 Cal.App.2d 428, 435 [73 Cal.Rptr. 83]; *Estate of Galletto* (1946) 75 Cal.App.2d 580, 585-588 [171 P.2d 152].)

## IV. DISPOSITION

The judgment is affirmed. Defendant, Pamela Ann Re, is to recover her costs on appeal from plaintiff, Steven L. Re.

Grignon, J., and Armstrong, J., concurred.