[Civ. No. 23381.   Second Dist., Div. One.   Apr. 10, 1959.]

ETHEL H. VAN HOUTEN et al., Plaintiffs and Appellants, v. THOMAS W. WHITAKER et al., Defendants and Appellants.

Courtney A. Teel for Plaintiffs and Appellants.

James J. McCarthy and David G. Jackson for Defendants and Appellants.

LILLIE, J.—Plaintiffs' action was one to impose a trust upon one-half of the distributable property in the estate of Clara Haydock, deceased. From a judgment declaring such a trust, defendants have appealed. A cross-appeal is prosecuted by all plaintiffs from part of the judgment denying additional relief and by certain of the plaintiffs from such portion of the judgment as decreed that they take nothing under decedent's will.

The facts may be summarized as follows: Clara and her husband, Leon, had been married for 50 years or thereabouts.

Except for a small ranch separately owned by Leon, all their property was community. In March of 1950, when Clara was 75 and Leon 80, they executed a document entitled "Joint Will" prepared by an attorney and never thereafter revoked. The critical provisions thereof are contained in paragraphs Second, Third, Fourth and Fifth.

By the Second paragraph, Leon willed all his property to Clara, should she survive him, with the further provision that upon her death any of his property still held by her should go to certain of his named relatives. By the Third, Clara left all her estate to Leon with the proviso that any portion of her estate remaining in his hands upon his death should go to certain of her named relatives.

The Fourth paragraph provided that if the survivor of the two should fail to survive the distribution of the estate of the one who died first, then the estate should be considered as one, and one-half of it should go to certain named persons, not all of whom are relatives of Leon, and the other half should go to the persons named as relatives of Clara.

Paragraph Fifth reads as follows: "Both of us agree that upon the death of the last one of us the estate remaining shall be divided in half, one half shall go to the relatives of Leon Albert Haydock in the manner and in the amounts and to the persons above named as his relatives, and the other half shall go to the relatives of Clara C. Haydock in the manner and in the amounts named."

At the time the will in question was executed, as well as upon Leon's death less than three months later, the great bulk of the property owned by the couple, and concededly acquired during marriage with community funds, stood in their names as joint tenants.

Upon Leon's death, the foregoing joint will was admitted to probate, the only asset eventually distributed thereunder consisting of a parcel of property worth approximately $1,190. In the same numbered proceeding, however, the probate court rendered its decree establishing the fact of Leon's death and terminating the joint tenancy which involved 10 parcels of realty appraised at $86,464.40.

On April 16, 1956, some six years later, Clara executed a will apparently prepared by an attorney other than the draftsman of the joint will, leaving most of her property to defendants with certain small bequests to certain of the plaintiffs. Upon her death the document was admitted to probate, whereupon

plaintiffs instituted this action in quasi specific performance, contending that Clara's will could not, and did not, dispose of one-half of the property held by her with Leon as joint tenants, and that as Leon's relatives and named beneficiaries under the prior joint will they were entitled to Leon's one-half, subject only to Clara's use as the survivor and to the administration of said one-half in her estate.

The trial court found for plaintiffs, although it denied relief by way of an accounting as to certain property transferred during Clara's lifetime; it also decreed that certain plaintiffs named in Clara's will could not take thereunder. Both sides have appealed, plaintiffs' appeal being only from portions of the judgment adverse to them.

Defendants' main contentions, limited to the claim that the evidence is insufficient to sustain contrary findings, may be stated thus: the language of the joint will does not manifest any intent on the makers' part to dispose of property held by them in joint tenancy; and the provisions of the same document, particularly paragraph Fifth, do not constitute a contract to devise property in a certain manner which could be specifically enforced by the promisees (plaintiffs here) against Clara or her legal representative.

██ "A joint will is a single testamentary instrument constituting or containing the wills of two or more persons, and jointly executed by them as their respective wills" (*Daniels* v. *Bridges*, 123 Cal.App.2d 585, 588 [267 P.2d 343]). ██ A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other (*Frazier* v. *Patterson*, 243 Ill. 80 [90 N.E. 216, 27 L.R.A.N.S. 508, 17 Ann.Cas. 1003]. *Daniels* v. *Bridges, supra*, 123 Cal.App.2d 588, 589). ██ "Where two parties agree to make mutual wills, each promising to dispose of his property to the other or, if the other be dead, to certain third persons, and one of the parties performs by leaving his property to the other, the intended devisees and legatees are entitled to enforce their rights as beneficiaries under the agreement. ██ The contracting party who survives becomes estopped from making any other or different disposition of the property, and his obligation under the agreement becomes absolutely irrevocable and enforceable against him, at least where he avails himself of the provisions of decedent's will in his favor and accepts substantial benefits thereunder" (*Brown* v. *Superior Court*, 34 Cal.2d 559, 564 [212 P.2d 878]).

Section 1624, subdivision 6 of the Civil Code, provides that an agreement to devise or bequeath property must be in writing; however, a subsequently executed will may relate back to the making of any oral agreement which it embodies so as to validate the latter under the statute of frauds (*Potter* v. *Bland*, 136 Cal.App.2d 125, 131 [288 P.2d 569]). Furthermore, the contract to make a will may be in the will itself (*Chase* v. *Leiter*, 96 Cal.App.2d 439, 450 [215 P.2d 756]), and it is now settled that a single written instrument may constitute both a will and a contract (*Estate of Watkins*, 16 Cal. 2d 793, 797 [108 P.2d 417, 109 P.2d 1]).

We first consider appellants (defendants') claim that there was neither sufficient, nor any, evidence to warrant the finding that contemporaneously with the execution of the joint will there existed an enforceable agreement between Clara and Leon to dispose of their interests in the manner provided— such an agreement, of course, would be a condition precedent to the maintenance of the present action. (*Brown* v. *Superior Court, supra*, 34 Cal.2d 564). The mere fact that a joint will contains reciprocal, similar or identical provisions does not of itself constitute sufficient evidence of any alleged oral agreement (*Notten* v. *Mensing*, 3 Cal.2d 469, 477 [45 P.2d 198]) nor is it enough to establish a legal obligation to forbear revocation in the absence of a valid contract (*Daniels* v. *Bridges, supra*, 123 Cal.App.2d 585, 589); however, it is no longer necessary to show that the will was made pursuant to an agreement not to revoke (*Brown* v. *Superior Court, supra*, 34 Cal.2d 564, 565), disapproving of a contrary statement in *Lynch* v. *Lichtenthaler*, 85 Cal.App.2d 437 [193 P.2d 77], relied on by appellants.

The trial court interpreted the will as it involved this proceeding without the aid of extrinsic evidence, although such evidence was taken with respect to a consolidated action from which an appeal has not been taken; its interpretation, therefore, is before this court as a matter of law (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]). Although not bound by the construction adopted below, we are of the view that the trial court was correct in finding that the joint will was sufficiently contractual in character as to make it enforceable in a proceeding of this kind.

A mere reading of the instrument shows an obvious intent to avoid intestate succession under section 228 of the Probate Code. Just as a contract must be construed in its entirety (12 Cal.Jur.2d 331-332), it is also the rule that in examining a

testamentary document one must do so with a view to discovering the dominant testamentary scheme (*Estate of Kruger,* 55 Cal.App.2d 619, 622 [131 P.2d 619]). It must be borne in mind that the great bulk of the property owned by both decedents had been acquired during marriage and with community funds. Although such property stood in their names as joint tenants, Leon and Clara looked upon their holdings as community property and intended to make testamentary disposition thereof as such; thus, Leon's cash bequests exceeded by almost tenfold his community interest in the sole parcel of property not held in joint tenancy, and Clara in turn devised her interest in certain improved property which likewise stood in joint tenancy. Paragraph Fourth, effective if both parties died during the administration of the other's estate, provided that ''our estate shall be considered as one and shall be divided equally among our respective relatives in the following manner. . . .'' Significantly enough, certain of Leon's relatives who might have taken under section 228, Probate Code, are disinherited. Clara, on her part, disposed of her share of the family's holdings in a manner other than provided by the aforementioned statute of succession. Coming now to paragraph Fifth, if respondents (plaintiffs) constituted all of Leon's relatives who, in the absence of testamentary disposition by Clara, as survivor, would be entitled to take under section 228, and if the same were true as to those persons named by Clara, the paragraph would mean that both Leon and Clara agreed not to exercise the right of testamentary disposition over the one-half received from the other by paragraphs Second and Third; the situation here is otherwise. As the trial court correctly reasoned: ''. . . if we are to give meaning to paragraph Fifth, the only meaning can be that each agreed that if he or she were the survivor, he or she would will one-half of the property remaining at his or her death to the named relatives of the other.''

But, contend appellants (defendants), paragraph Fifth does not expressly provide for the making of such wills; however, a covenant to do so was necessarily implied if essential to pass the property as agreed on the survivor's death. It is not necessary that such a covenant be spelled out in order to insure that one party will not take unfair advantage of a situation (12 Cal.Jur.2d 345-346). ■■■ ''In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'' (*Brown* v. *Superior*

*Court, supra,* 34 Cal.2d 564). ▆▆▆ The case of *Halldin* v. *Usher,* 49 Cal.2d 749 [321 P.2d 746], where the present point was raised, does not appear to be to the contrary. There parol evidence was introduced to show that the document was intended as a testamentary instrument and not as a third party beneficiary contract; the Supreme Court affirmed on the ground that substantial evidence existed to support such a finding. Had such parol evidence been forthcoming in the case at bar, the trial court's decision might or might not have been different. In that respect, it is significant that the attorney who drafted the joint will, although available to testify, was never called as a witness for the defendants. Statements made to him by Leon and Clara in the presence of each other respecting agreements made or about to be made were not privileged (*Scherb* v. *Nelson,* 155 Cal.App.2d 184, 187-188 [317 P.2d 164]) ; hence, the failure to offer such evidence raised the inference that it would have been adverse if produced (*Shehtanian* v. *Kenny,* 156 Cal.App.2d 576, 580 [319 P.2d 699]).

▆▆▆ The remaining contention on defendant's appeal relates to the power of testamentary disposition over joint tenancy property. ▆▆▆ It is urged that the taking of title as joint tenants was tantamount to a binding agreement that the same should not thereafter be held as community property, citing *Schindler* v. *Schindler,* 126 Cal.App.2d 597 [272 P.2d 566]. While such is the general rule, it has long been established that the character of property thus held may be changed by an executed oral agreement between the parties (*Woods* v. *Security First Nat. Bank,* 46 Cal.2d 697, 701 [299 P.2d 657]). Such an agreement may be express or implied (*Long* v. *Long,* 88 Cal.App.2d 544, 549 [199 P.2d 47]), and the change in status may be shown by the nature of the transaction or appear from the surrounding circumstances (*James* v. *Pawsey,* 162 Cal.App.2d 740 [328 P.2d 1023]).

▆▆▆ Mention has heretofore been made of the fact that Leon made bequests far in excess of his disposable interest in the sole asset conceded by defendants to be community property. Too, Clara in turn disposed of property held in joint tenancy. Paragraphs Second and Third, respectively, refer to "all of my estate," and it is inconceivable that persons who had reached the maturity enjoyed by both of these parties would anticipate acquisition of additional holdings not then within their purview. *Estate of Watkins,* 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1], declares that under proper circum-

stances a will may be a contract which becomes effective as soon as executed. The case is apposite and the following language therefrom here pertinent; ''Even if it be assumed that they did have such intention at the time of the execution of the so-called joint tenancy instruments above mentioned and that the execution of said instruments had the effect of carrying out such intention, it seems entirely clear that subsequently and at the time of the joint and mutual will, they jointly expressed their intention in writing that all of said property should have the status of community property.'' (P. 797.) We think that the only sensible construction of the document at bar was that by their joint will the parties transmuted into community property any and all property held of record as joint tenants.

We now consider plaintiffs' cross-appeal from that part of the judgment that denied them relief by way of an accounting of moneys given to certain of Clara's relatives following Leon's death. Briefly, the evidence established that $1,025 was loaned or given to a niece, defendant Frances Dubbs, in or about the year 1956 to finance the purchase of certain property. Admittedly that sum has never been repaid, and the trial court should have authorized that one-half thereof be subjected to the administration of Clara's estate. (*Sandrini* v. *Ambrosetti,* 111 Cal.App.2d 439, 451 [244 P.2d 742]). The refusal of an accounting as to additional monies was within the trial court's province as the trier of fact and cross-appellants concede that their supporting testimony is ''questionable.'' As to that phase of the cross-appeal, we cannot reweigh such testimony and the finding must stand.

Finally, certain plaintiffs have cross-appealed from such portion of the judgment as declared that they take nothing as specific legatees under Clara's will of 1956 presently in the course of administration. No issue respecting their rights in that regard was tendered either by the pleadings or the facts developed at the trial; nor was any finding of fact made with respect thereto. The estoppel here involved did not apply to Clara's one-half, although the trial court may have felt that there were equitable grounds for decreeing that these cross-appellants should not be permitted to share in both estates. Under the circumstances, we are bound by the rule that a judgment that goes beyond the issues litigated is void insofar as it exceeds those issues (*In re Wren,* 48 Cal.2d 159, 163 [308 P.2d 329]).

The case is remanded to the trial court with instructions

to modify its findings of fact, conclusions of law, and judgment in accordance with the views herein expressed. The judgment as so amended is affirmed. Both parties will bear their own costs.

White, P. J., and Fourt, J., concurred.